GREGORY C. LOARIE (CA Bar No. 215859)
gloarie@earthjustice.org
EARTHJUSTICE
1 Sansome St., Ste. 1700
San Francisco, CA 94104
Tel: (415) 217-2000
Fax: (415) 217-2040

ANDRIA H. SO (CA Bar No. 341595)
aso@earthjustice.org
EARTHJUSTICE
707 Wilshire Blvd., Suite 4300
Los Angeles, CA 90017
Tel: (415) 217-2000
Fax: (415) 217-2040

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES FISH AND WILDLIFE SERVICE, et al.;<br><br>Defendants. | Civ. No. 5:25-cv-09943-EKL-VKD<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: October 28, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. Eumi K. Lee<br>Place: Courtroom 7 |

## I. INTRODUCTION

The U.S. Fish and Wildlife Service does not dispute that the deadline for it to issue a final listing determination for the California spotted owl was February 23, 2024—12 months after the agency published its proposed listing rule. The Service "does not dispute its statutory obligation to issue a final listing determination for the California spotted owl . . . and that it has missed this statutory deadline." Fed. Defs.' Opp'n, Dkt. No. 27 (Opp.), at 8. Nor does the Service contest the Center for Biological Diversity's standing to enforce the Endangered Species Act's mandatory deadlines under 16 U.S.C. § 1540(g)(1)(C). Accordingly, the Service concedes that the Center is entitled to summary judgment and "does not oppose an order from the Court directing the agency to complete the final listing determination." Opp. at 8. With the merits resolved, the parties agree: The only issue for this Court to resolve is the deadline "by which the Court should order the Service to issue a final listing determination." Opp. at 2.

Having blown its February 23, 2024, deadline by nearly three years already, the Service asks this Court to grant it another 19 months—until May 10, 2028—to issue its final listing determination. Opp. at 1–2. The Service's preferred remedy would afford the agency *well over five years* to complete a task that Congress directed the Service to complete "within 12 months." 16 U.S.C. § 1533(b)(6)(A). The Service's deadline is wholly unreasonable and would only reward the agency for its self-imposed staffing woes, politically motivated foot-dragging, and stubborn recalcitrance in carrying out its obligations under the ESA. The Service's proposed deadline will also have grave implications for the California spotted owl, a keystone species that, by all accounts, is currently in decline throughout its remaining range and at risk of extinction. *See* Endangered and Threatened Wildlife and Plants; California Spotted Owl, 88 Fed. Reg. 11600 (Feb. 23, 2023).

For the reasons set forth below, the Center asks the Court to reject the Service's proposed deadline and instead order the Service to issue a final determination for the California spotted owl by November 19, 2026—a deadline that coincides with the one-year anniversary of this lawsuit and therefore mirrors the 12-month timeframe prescribed by the ESA for finalizing a listing determination. Under the circumstances of this case, November 19, 2026, is a reasonable deadline that effectuates Congress' judgment that "timeliness in the listing process is essential." *Biodiversity Legal Found. v.*

*Badgley*, 309 F.3d 1166, 1175 (9th Cir. 2002) (citation omitted). The Service has not met its burden of demonstrating otherwise.

## II. ARGUMENT

### A. November 19, 2026, Is a Reasonable Deadline for the Service to Issue a Final Listing Determination for the California Spotted Owl; May 10, 2028, Is Unreasonable.

#### 1. A Reasonable Deadline Is One that Requires Substantial Compliance with the ESA; It Is the Service's Burden to Prove Substantial Compliance Is Impossible.

Consistent with longstanding Ninth Circuit precedent, the Court's role is to order a "reasonable" deadline for compliance with the ESA, *Env't Def. Ctr. v. Babbitt*, 73 F.3d 867, 872 (9th Cir. 1995), but this should not invite back the discretion on the part of the agency that Congress has eliminated by statute. A reasonable deadline must reflect "the mandated listing deadlines under the ESA and congressional intent that time is of the essence in listing threatened species." *Ctr. for Biological Diversity v. Kempthorne*, No. C 08-1339 CW, 2008 WL 1902703, at *3 (N.D. Cal. Apr. 28, 2008). Ultimately, "[o]nly by requiring substantial compliance with the act's procedures can [the courts] effectuate the intent of the legislature." *Biodiversity Legal Found.*, 309 F.3d at 1177.

The Service's insinuation that administrative "feasibility" is the overriding criterion in selecting a reasonable deadline is incorrect and based on non-ESA caselaw, largely from other circuits, that is inapplicable here. *See* Opp. at 8–10 (citing *California v. U.S. Env't Prot. Agency*, 385 F. Supp. 3d 903, 908 (N.D. Cal. 2019) (addressing violation of the Clean Air Act); *Nat. Res. Def. Council v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1974) (addressing violation of the Water Pollution Control Act); *Cronin v. Browner*, 90 F. Supp. 2d 364, 373 (S.D.N.Y. 2000) (addressing violation of the Clean Water Act); *Sierra Club v. Thomas*, 828 F.2d 783, 798–99 (D.C. Cir. 1987) (addressing violation of the Clean Air Act); *United Steelworkers of Am. v. Rubber Mfrs. Ass'n*, 783 F.2d 1117, 1120 (D.C. Cir. 1986) (addressing violation of the Occupational Safety and Health Act); *Me. Ass'n of Handicapped Persons v. Dole*, 623 F. Supp. 920, 926 (D. Me. 1985) (addressing violation of the Surface Transportation Assistance Act)). Regardless, courts have made clear that "[t]he burden on an agency of establishing impossibility or infeasibility of [complying with] the statutory time frame is heavy." *Sierra Club v. Thomas*, 658 F. Supp. 165, 171 (N.D. Cal. 1987); *see also Ctr. for Biological Diversity v. Bernhardt*,

No. 220CV1812JCMNJK, 2021 WL 1565787, at *9 (D. Nev. Apr. 21, 2021) (finding the Service failed "to persuasively argue that the 30-day deadline is impossible or infeasible."). "It is especially heavy where, as here, the agency has failed to demonstrate any diligence whatever in discharging its statutory duty . . . and has in fact ignored that duty for several years." *Sierra Club*, 658 F. Supp. at 172.

**2. November 19, 2026, Is a Reasonable Deadline that Reflects the ESA's Statutory Text and Purposes.**

Under the circumstances of this case, November 19, 2026, is a reasonable deadline for the Service to issue a final listing determination for the California spotted owl. As an initial matter, November 19, 2026, is the one-year anniversary of this lawsuit. Complaint, Dkt. No. 1. The Center's lawsuit—if not the Center's April 15, 2025, notice of intent to sue—put the Service on notice that the ESA's listing deadlines would be enforced and that the Service would be under a court-ordered deadline to finalize its listing determination. Requiring the Service to act by November 19, 2026, therefore mirrors the "12-month" timeframe prescribed by the ESA for finalizing a proposed listing rule and reflects "substantial compliance with the act's procedures." *Biodiversity Legal Found.*, 309 F.3d at 1177.

The Service should not be rewarded for its decision to sit on its hands and await the actual court-ordered deadline. As detailed in the Center's opening brief, courts have imposed similarly short deadlines in analogous cases involving the ESA. Pl.'s Mot. for Summary Judgment, Dkt. No. 22 (Pl.'s Mot.), at 10–11; *see Kempthorne*, 2008 WL 1902703, at *4 (ordering the Service to publish a final listing determination within 17 days of the order); *Bernhardt*, 2021 WL 1565787, at *10 (ordering the Service to submit a 12-month finding within 30 days of the order); see also *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1193 (10th Cir. 1999) (ordering the Service to issue a critical habitat designation "as soon as possible, without regard to the Secretary's other priorities under the ESA" and referring as guidance to a district court order to take final action within 14 days).

The Service's attempts to distinguish these cases fail. Opp. at 17–19. The court's ruling in *Kempthorne* was not based on the Service's preparation of drafts or completed review, as the Service implies. Opp. at 18. Rather, the court recognized that "[o]ther than the general complexity of finalizing the rule, Defendants offer[ed] no specific facts that would justify the existing delay, much less further delay" and that "[t]o allow Defendants more time would violate the mandated listing deadlines under the

ESA and congressional intent that time is of the essence in listing threatened species." 2008 WL 1902703, at *3. And as in *Bernhardt*, the Service's general protestations are "no reason to grant additional time for [the Service] to make its admittedly overdue finding." 2021 WL 1565787, at *9.

Moreover, requiring the Service to finalize a listing determination for the owl by November 19, 2026, effectuates the ESA's overarching purpose "to halt and reverse the trend toward species extinction, whatever the cost." *Oregon Nat. Res. Council v. Allen*, 476 F.3d 1031, 1033 (9th Cir. 2007) (quoting *TVA v. Hill,* 437 U.S. 153, 194 (1978)). The Service does not dispute that the California spotted owl is currently declining throughout most of its historic range, "currently in danger of extinction" throughout coastal and southern California, and "likely to become in danger of extinction within the foreseeable future" throughout the Sierra Nevada. 88 Fed. Reg. at 11600. The owl's dire status necessitates prompt action. Requiring the Service to finalize its listing determination by November 19, 2026, is consistent with the ESA's purposes and will ensure that that the owl is protected in time to stem further declines.

**3. The Service Has Not Met Its Burden of Proving that November 19, 2026, Is Unreasonable or that Complying with the ESA Before May 10, 2028, Is Impossible.**

The Service has not met the heavy burden of proving that November 19, 2026, is an unreasonable deadline or that complying with the ESA before May 10, 2028, is impossible.

***First***, the Service argues it "is experiencing a severe staffing shortage and a budget reduced by over 36% from the year prior." Opp. at 12. But in fact, the Service's budget and staffing woes are largely self-created. Indeed, the Service's admits that it has consistently requested a smaller budget than it claims to need to fulfill its duties under the ESA. The Service's fiscal year ("FY") 2026 budget request was only a little over half of what Congress ultimately appropriated, which the Service now claims is deficient for it to perform its mandatory duties. *See* Declaration of Elizabeth Maclin, Dkt. No. 28 (Maclin Decl.), ¶ 6; *see also* Declaration of Noah Greenwald, Dkt No. 25 (Greenwald Decl.), ¶ 9 (The Service's FY 2026 budget request of $7,375,000 was much less than the $22,000,000 granted for FY 2025.). The Service's staffing shortage was also by its own design, through "incentives designed to reduce the size of the federal workforce." Declaration of Adam Johnson, Dkt. No. 29 (Johnson Decl.), ¶

15; Maclin Decl., ¶ 7. To now argue that it is unable to comply with its statutory obligations is inappropriate. *See Ctr. for Biological Diversity v. Norton*, 304 F. Supp. 2d 1174, 1180 (D. Ariz. 2003) ("[T]he United States may not evade the law simply by failing to appropriate enough money to comply with it.") (citation omitted). It is not up to the Service to decide upon a slower pace of review that is untethered to the resources Congress has granted. "Congress has already set a mandatory deadline and appropriated a certain amount of funds to meet that deadline, and the degree of review must be feasible within those parameters." *San Francisco Baykeeper v. U.S. Fish and Wildlife Serv.*, No. 25-CV-01360-LJC, 2025 WL 2528687, at *6 (N.D. Cal. Sept. 3, 2025); *see also Forest Guardians*¸ 174 F.3d at 1192 ("In the face of Congress' clear command, the Secretary's inadequate resource argument must fail with respect to the appropriate remedy.").

The Service's reliance on *Environmental Defense Center v. Babbitt* is misplaced. 73 F.3d 867; Opp. at 11. "Unlike *Environmental Defense Center* where absolutely no money was available [due to a Congressional funding moratorium], Defendant here does have appropriated funds, albeit limited in amount. Budgetary constraints, far from being exceptional, are an everyday reality." *Norton*, 304 F. Supp. 2d at 1179. As no such moratorium exists here, the Service must meet its obligations with the budget allocated to it. Even in *Environmental Defense Center*, when the moratorium was lifted, the district court on remand ordered the Service to list the species at issue within 14 days. *Forest Guardians*, 174 F.3d at 1193. Nor is the Service's citation to *Center for Biological Diversity v. Norton* persuasive. 208 F. Supp. 2d 1044 (N.D. Cal. 2002); Opp. at 11–12. That case improperly relied upon *Environmental Defense Center* despite the Congressional funding moratorium's prior lifting and failed to address the Ninth Circuit authority emphasizing the need to enforce deadlines under the ESA that limit the executive branch's discretion. *See Ctr. for Biological Diversity v. Norton*, 254 F.3d 833, 840 (9th Cir. 2001) ("By imposing [the ESA's] deadlines, Congress 'replace[d] the Secretary's discretion with mandatory, nondiscretionary duties.'") (quoting H. Rep. No. 97-835, at 20 (1982)); *see also San Francisco Baykeeper*, 2025 WL2528687, at *8 (distinguishing the *Norton* decision as being unique in that the funding moratorium was closer in memory and disagreeing with Judge Conti's deference to the Service's lengthy review process as being incompatible with the ESA's one-year deadline).

Even if the Service's lack of budget and staff resources could excuse its delay—which it

cannot—the Service fails to make a compelling argument for why it should in *this* case. The Service speaks to an overall decrease in budget and staffing, but says little about what, if any, specific losses impact its ability to promulgate a final rule for the California spotted owl. An overall decrease in funding and staffing does not automatically indicate that the Service cannot complete an additional final action, which involves much less work than "twelve-month findings," and has been ordered in other cases to be filed in as little as 30 days. *See Bernhardt*, 2021 WL 1565787; *Ctr. for Biological Diversity v. Norton*, 163 F. Supp. 2d 1297, 1299–301 (D.N.M. 2001). Indeed, final rules have been ordered in as little as 14 or 17 days at times. *See Forest Guardians*, 174 F.3d at 1193; *Kempthorne*, 2008 WL 1902703, at *4.

***Second,*** the Service argues that there are several more tasks that must be completed in order to finalize its listing rule. Opp. at 13–14, 18. But as in *Kempthorne*, "[o]ther than the general complexity of finalizing the rule, [the Service] offer[s] no specific facts that would justify the existing delay, much less further delay." 2008 WL 1902703, at *3. Congress has already determined that finalizing such a rule should take no longer than a year. *See Ctr. for Biological Diversity v. Norton*, No. CV 02-1067 LH/RHS, 2003 WL 27384876, at *3 (D.N.M. Sept. 30, 2003) ("Courts applying this standard have ordered compliance by the [Service] within weeks or months, not years into the future."). Given Congress' clarity in setting the statutory deadline, the Court should not create an exception of its own making. Nor would it be reasonable in this case, where the Service fails to point to any specific reason finalizing the proposed rule would be too complex to meet its obligation.[1]

To the extent the Service has any preliminary steps it wishes to take before finalizing its listing rule, it has had plenty of time already to do so. The Center has reminded the Service of its obligations to

[1] The Service's argument that it must conduct economic analysis of the 4(d) rule for the threatened portion of the owl's range is a requirement of its own making based on a wrongly decided case that is now being challenged by the Center. *See* Ctr. for Biological Diversity's Br. in Supp. of Its Mot. to Lift the Stay and File a Suppl. Pleading Against Fed. Defs., *Rocky Mountain Elk Found. v. U.S. Dep't of the Interior*, No. 2:25-cv-00029-DWM (D. Mont. July 21, 2026) (challenging the Service's final rule under 91 Fed. Reg. 45723 (July 21, 2026) adopting a requirement to analyze the economic impacts of each species-specific 4(d) rule it adopts). To the extent the Service is determined to do an economic analysis following *Kansas Natural Resources Coalition. v. U.S. Fish and Wildlife Service*, it has had 18 months since that decision on March 29, 2025, to take such action. 780 F. Supp. 3d 650 (W.D. Tex. 2025). Its failure to do so illustrates that this is yet another instance of the Service sitting on its hands and delaying protection of the California spotted owl.

the California spotted owl repeatedly; this litigation is merely the latest instance. The Service certainly knew of its obligation before this case even began. In the time since the Center's filing of the complaint, almost a year later, the Service has had the opportunity to conduct the notice and comment or internal review steps it now cites as an excuse for further delay. The Court should not reward the Service for its failure to take action as it awaits the court-ordered deadline, and instead order the agency to conduct what steps it must on an expedited time frame. *See Sw. Ctr. for Biological Diversity v. Dep't of Interior*, No. CIV99519LFGLCSACE, 2000 WL 36739927, at *4 (D.N.M. Mar. 13, 2000) ("[W]hen necessary, [the Service] can expedite its research and analysis as well as the internal government approval process.").

***Third***, the Service argues it is hampered by "court-ordered deadlines in other previous cases, primarily resulting from a settlement agreement between the Service and the Center for Biological Diversity in another case." Opp. at 14–15. The Center objects to the Service's use of the prior settlement agreement between the Center and the Service and moves to strike the exhibit and any portions of the brief and declaration that refer to it. *See* Ex. A, Dkt. No. 28-1; Opp. at 14–15; Johnson Decl., ¶ 12; Maclin Decl., ¶¶ 15–17. By its own terms the Settlement cannot be used as evidence in this case. Ex. A, Dkt. No. 28-1, at 7 ("No part of this Agreement shall have precedential value in any litigation or in representations before any court or forum or in any public setting. No party shall use this Agreement or the terms herein as evidence of what does or does not constitute a reasonable timeline for making determinations regarding the listing of or designation of critical habitat for any species."). The Service's citation to the settlement agreement was improper and should not be considered by the Court.

Moreover, the Service's workload is a product of the Service's own making. "[J]udicially-imposed deadlines in other cases flow from the inadequacy of ESA or NEPA-mandated action or the Secretary's decision not to take action at all. . . . Though one step removed, the deadlines are a product of the Secretary's discretionary actions." *Norton*, 163 F. Supp. 2d at 1300. And the Ninth Circuit has made clear that "[t]he court ha[s] no discretion to consider the Service's stated priorities." *Biodiversity Legal Found.*, 309 F.3d at 1178; *see also Forest Guardians*, 174 F.3d 1178, 1190 ("[W]hen Congress by organic statute sets a specific deadline for agency action, neither the agency nor the court has discretion. The agency must act by the deadline."). In fact, the Service's litany of court-ordered deadlines' effects

on its prioritization cuts against it. By stating that all listing actions planned for the next year are a result of court-ordered deadlines in prior cases, Opp. at 17; Maclin Decl., ¶ 13, the Service shows that it will not comply with its statutory obligations without its feet being held to the fire. It is necessary for this Court to do so again here for the California spotted owl's protections to be secured within the timeline Congress envisioned.

***Fourth***, the Service argues "no new information has come to the Service's attention that would suggest that the active threats to the species have increased." Opp. at 15. In fact, the owl is subject to greater threats than before at the hands of this administration. For one, the executive has directed all agencies to "suspend, revise, or rescind all existing regulations, orders, guidance documents, policies, settlements, consent orders, and other agency actions that impose an undue burden on timber production." Immediate Expansion of American Timber Production, 90 Fed. Reg. 11365, 11366 (Mar. 1, 2025). In another action, the Department of Agriculture has proposed "to rescind the 2001 Roadless Area Conservation Rule . . . which established broad prohibitions on road construction, road reconstruction, and timber harvesting within inventories roadless areas on National Forest System lands." Special Areas; Roadless Area Conservation, 91 Fed. Reg. 53827, 53827 (Aug. 20, 2026). Such unbridled timber production will increase the very logging that has driven the California spotted owl to require the listing protections of the ESA to avoid extinction. 88 Fed. Reg. at 11616–11618. The Service's meager attempts to now argue the California spotted owl is otherwise protected rely on a state plan that has no bearing on the species' ESA determination and a Section 7 consultation which does not apply to the owl without the ESA listing at issue in this case is unpersuasive. Opp. at 15; Johnson Decl., ¶ 5–6.

Ultimately, the Service's preferred deadline of May 10, 2028, has no legitimate justification. The reasons proffered by the Service should not be considered by the Court in crafting the remedy, as they consist of factors within the agency's control, vague generalizations, or are otherwise irrelevant to the issue at hand. In contrast, the Center's proposed deadline of November 19, 2026, one year from the filing of the Center's complaint in this case, is made in the spirit of Congress' intent to impose firm, mandatory deadlines upon the Service to protect vulnerable species just like the California spotted owl.

### B. Mr. Greenwald's Declaration Is Proper

The Service's passing objections to a handful of statements in Mr. Greenwald's declaration are unfounded. Opp. at 20–22. Mr. Greenwald's testimony about his research and advocacy concerning California spotted owls and the Service's listing determinations is relevant both to the Center's Article III standing and the appropriate remedy in this case. *See, e.g., Yurok Tribe v. U.S. Bureau of Reclamation*, 231 F. Supp. 3d 450, 470 (N.D. Cal. 2017) ("The parties do not dispute that extra-record evidence may be considered in a record review case to demonstrate standing and the necessity for injunctive relief."). Notably, the extra-record declarations filed by the Service in support of its opposition brief and preferred remedy address the very same issues that the Service mischaracterizes as "irrelevant" when coming from Mr. Greenwald. *Compare* Greenwald Decl., ¶ 15 ("The Service failed to make findings from their workplan for 30 species in fiscal year 2017) *with* Maclin Decl., ¶ 12 ("For FY 2017, the Workplan indicated 41 12-month findings were planned, the Service completed 55 findings.").

Mr. Greenwald's testimony is also based on his personal knowledge. In his professional capacity as the Center's Endangered Species Program Director, Mr. Greenwald has "tracked the number of species listed per year by the Service" for "more than two decades." Greenwald Decl., ¶ 11. Indeed, Mr. Greenwald has published peer-reviewed research analyzing the Service's compliance with the ESA's listing deadlines. *Id.*, ¶ 7. Mr. Greenwald's factual testimony regarding the Service's workload and annual budgets does not necessarily require "scientific, technical, or other specialized knowledge." *Siebert v. Gene Sec. Network, Inc*, 75 F. Supp. 3d 1108, 1114 (N.D. Cal. 2014) (holding "observations about the ordinary inner workings of the [agency], derived from . . . personal experience" are not "matters that require scientific, technical, or specialized knowledge"). Regardless, Mr. Greenwald has established his qualifications as an expert who may testify in the form of an opinion as to the Service's track record of compliance with the ESA's listing deadlines. Mr. Greenwald's testimony is therefore well-founded and admissible under either Rule 701 or 702 of the Federal Rules of Evidence.

## III. CONCLUSION

For the reasons stated above, the Center respectfully requests that the Court grant its Motion for Summary Judgment and order the Service to take final action on the proposed rule listing the California spotted owl as endangered and threatened species under the ESA by November 19, 2026.

Dated: October 1, 2026

Respectfully submitted,

GREGORY C. LOARIE (CA Bar No. 215859)
gloarie@earthjustice.org
EARTHJUSTICE
1 Sansome St., Ste. 1700
San Francisco, CA 94104
Tel: (415) 217-2000
Fax: (415) 217-2040

/s/ Andria H. So
ANDRIA H. SO (CA Bar No. 341595)
aso@earthjustice.org
EARTHJUSTICE
707 Wilshire Blvd., Suite 4300
Los Angeles, CA 90017
Tel: (415) 217-2000
Fax: (415) 217-2040

*Attorneys for Plaintiffs*