United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CENTER FOR BIOLOGICAL DIVERSITY,

Plaintiff,

v.

UNITED STATES FISH AND WILDLIFE SERVICE, et al.,

Defendants.

Case No. 25-cv-09943

**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 22

On November 19, 2025, Plaintiff Center for Biological Diversity ("Center") brought this action against Defendants United States Fish and Wildlife Service, its Director Brian Nesvik, and Secretary of the Interior Doug Burgum (collectively "FWS") to enforce FWS's obligations under the Endangered Species Act ("ESA"). *See* Compl., ECF No. 1. Now before the Court is the Center's motion for summary judgment. Mot., ECF No. 22; Reply, ECF No. 30. FWS opposes the motion. Opp., ECF No. 27. The Court carefully reviewed the parties' briefs and relevant authority and heard argument on October 28, 2026. For the reasons set forth below, the Court GRANTS in part the Center's motion for summary judgment.

## I. BACKGROUND

This case presents a narrow remedies question: By what date should the Court order FWS to satisfy its statutory duty to issue a final listing determination for the California spotted owl? On February 23, 2023, FWS issued a proposed rule concluding that all sub-populations of the California spotted owl are either "endangered" because they are currently in danger of extinction or "threatened" because they soon will be. *See* Endangered and Threatened Wildlife and Plants; California Spotted Owl, 88 Fed. Reg. 11600 (Feb. 23, 2023) ("Proposed Listing Rule"). Both parties agree that FWS had a duty under the ESA to act on the proposed rule within one year and

that FWS failed to do so. *See* 16 U.S.C. § 1533(b)(6)(A)(i); *see also* Opp. at 8 ("[FWS] does not dispute its statutory obligation to issue a final listing determination for the California spotted owl . . . and that it has missed this statutory deadline."). Both parties also agree that the appropriate remedy is "an order from the Court directing the agency to complete the final listing determination." *See* Opp. at 8; Mot. at 13. The parties dispute only what constitutes a reasonable deadline for complying with said order. The Center requests November 19, 2026. Mot. at 10. FWS offers May 10, 2028. Opp. at 12. The parties agree that this issue "is appropriate for resolution through summary judgment and remedy briefing, without the need for discovery, an administrative record, or trial." Joint Case Mgmt. Statement at 3, ECF No. 20.

**A. Statutory Background**

Congress passed the ESA to "provide a program for the conservation of . . . endangered or threatened species." 16 U.S.C. § 1531(b). A species is "endangered" if it is "in danger of extinction throughout all or a significant portion of its range." A species is "threatened" if it is "likely to become an endangered species within the foreseeable future." *Id.* § 1532(6), (20). Under the ESA, either the Secretary of the Interior or the Secretary of Commerce must designate a species as endangered or threatened based on at least one of five factors: "(A) The present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence."[1] 16 U.S.C. §§ 1532(15), 1533(a)(1)(A)-(E).

Any "interested person" may petition either Secretary to add a species to the endangered or threatened species list. *Id.* § 1533(b)(3)(A). To the maximum extent practicable, within ninety days of receiving such petition, the Secretary must determine if it "presents substantial scientific or commercial information indicating that [listing] may be warranted." *Id.* If the Secretary concludes that the petition clears this bar, the Secretary must make one of the following findings within twelve months ("12-month finding"): (1) listing the species is not warranted; (2) listing the

[1] According to FWS, the Secretary of the Interior "is generally responsible for all terrestrial and freshwater species, including the California spotted owl." Opp. at 2 n.2.



United States District Court
Northern District of California

species is warranted; or (3) listing the species is warranted but doing so immediately is precluded by other pending proposals. *See id.* § 1533(b)(3)(B). If the Secretary determines that a listing is warranted, the Secretary must promptly publish a proposed rule and provide a public comment period lasting at least sixty days. *See id.* § 1533(b)(3)(B)(ii); *see also* 50 C.F.R. § 424.16(c)(2).

Within one year of the publication of the proposed rule listing the species as either threatened or endangered, the Secretary must make a "final listing determination" by publishing one of the following in the Federal Register: (1) a final rule listing the species; (2) notice that the Secretary is extending the one-year period by "no more than six months" because of "substantial disagreement regarding the sufficiency or accuracy of the available data"; or (3) notice that the Secretary is withdrawing the proposed rule and the reasons for doing so. *See* 16 U.S.C. § 1533(b)(6)(A)(i), (b)(6)(B)(i)-(ii). The ESA contains a citizen-suit provision that authorizes any person to bring an action against the Secretary when the Secretary allegedly fails to "perform any act or duty under section 1533 of this title which is not discretionary." *See id.* § 1540(g)(1)(C). It further provides that "[t]he district courts shall have jurisdiction . . . to order the Secretary to perform such act or duty." *Id.*

### B. Factual Background

California spotted owls are medium-sized brown owls with a "round face, . . . dark brown eyes, and a yellowish green bill." *See* Proposed Listing Rule, 88 Fed. Reg. at 11603. Since 2000, several interest groups have petitioned FWS to list the California spotted owl as endangered or threatened, and FWS found thrice that those petitions were "not warranted." *See* Opp. at 7 & n.6. The Center and other non-parties brought suit in 2020, challenging the most recent of those findings. *See* Mot. at 6 (discussing *Sierra Forest Legacy v. U.S. Fish & Wildlife Serv.*, No. 5:20-cv-05800-BLF, 2020 WL 4791284 (N.D. Cal. Aug. 18, 2020)). That litigation ended in 2022 with a court-ordered settlement.

As part of the settlement agreement, FWS agreed to submit a new 12-month finding for the California spotted owl by February 15, 2023. *See id.*; Opp. at 7. FWS published the proposed rule corresponding to this 12-month finding on February 23, 2023. *See* Proposed Listing Rule, 88 Fed. Reg. 11600. The rule identifies two sub-populations of the California spotted owl: The Coastal-

Southern distinct population segment ("DPS"), proposed as "endangered," and the Sierra Nevada DPS, proposed as "threatened." *Id.*

FWS did not issue a final rule or extend the deadline to do so by February 23, 2024. *See* Fact Nos. 1-3, ECF No. 27-1. Finalizing the proposed rule as written would, for example, extend the ESA's criminal and civil penalties for killing endangered species to the Coastal-Southern DPS. *See* 16 U.S.C. §§ 1538(a)(1), 1540(a)-(b). It would also authorize the Secretary to issue regulations to protect the Sierra Nevada DPS. *See id.* § 1533(d). On November 19, 2025, the Center brought this action to "enforce the ESA's mandatory listing deadlines" with respect to the California spotted owl. Mot. at 7; *see also* Compl. ¶ 1.

## II. LEGAL STANDARD

A court may grant summary judgment on any issue if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may satisfy this burden in different ways depending on whether it has the burden of proof at trial. If the moving party bears the burden of proof at trial, it must cite to "particular parts of materials in the record" to demonstrate that no reasonable trier of fact could find for the non-moving party. Fed. R. Civ. P. 56(c)(1)(A). By contrast, if the non-moving party bears the burden of proof at trial, the moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

Once the moving party has met its burden, the burden shifts to the non-moving party to designate specific facts showing that there is a genuine dispute. *Celotex*, 477 U.S. at 324. To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-

movant's] position will be insufficient" to survive summary judgment. *Anderson*, 477 U.S. at 252. Instead, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.*

In determining whether there is a genuine dispute of material fact, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). The court does not "engage in credibility determinations or weigh evidence." *Munden v. Stewart Tit. Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

At summary judgment, the focus is not "on the admissibility of the evidence's form," but rather "on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule[] of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001). An affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## III. DISCUSSION

### A. Evidentiary Objections

The Court first addresses two evidentiary objections raised by the parties. FWS objects to eight paragraphs in the declaration of Mr. Noah Greenwald, who is the Center's endangered species program director. *See* Opp. at 20-22; *see also* Mot. Ex. C ("Greenwald Decl."). The Center objects to FWS's use of a previous settlement agreement between the parties, in which FWS agreed to deadlines for submitting 12-month findings for species not at issue in this case. *See* Reply at 7; *see also* Maclin Decl. Ex. A, ECF No. 28-1 ("Settlement Agreement").

United States District Court
Northern District of California

**1. FWS's objections to portions of the Greenwald declaration**

FWS seeks to exclude portions of the Greenwald declaration because they are irrelevant and because they reflect improper lay opinion testimony on matters for which Greenwald lacks personal knowledge. The Court considers each objection in turn.

FWS contends that paragraphs seven, fourteen, fifteen, and sixteen of the Greenwald declaration contain irrelevant information. *See* Opp. at 20-22. The challenged portions are as follows:

> Unfortunately, long delays in protection for endangered species and missed deadlines by the Service are the norm. In 2016, I was one of three authors of a study that found that listed species waited an average of twelve years to receive protection even though under the statute, listing is supposed to take no more than two years. Greenwald Decl. ¶ 7.
>
> Unlike 12-month listing determinations, a final listing determination as needed by the owl requires far less resources to complete. *Id.* ¶ 14.
>
> Under the first Trump administration, the Service failed to make findings from their workplan for 30 species in fiscal year 2017, 78 species in fiscal year 2018, 46 species in fiscal year 2019 and 58 species in 2020. In 2025, the first year of the Trump administration's second term, the Service missed findings for 25 species scheduled in the workplan with many of those that were completed, made before inauguration. *Id.* ¶ 15.
>
> Indeed, the Center has documented 47 species that have gone extinct waiting for endangered species protections. *Id.* ¶ 16.

FWS contends that these portions are irrelevant because they do not pertain to the "issue to be decided in this case," which is "the appropriate timeline to remedy the missed deadline." *See* Opp. at 20-22 (citing Fed. R. Evid. 402). At summary judgment, the bar for establishing relevance is relatively low. *See Sandoval v. County of San Diego*, 985 F.3d 657, 665-66 (9th Cir. 2021) (finding that objected-to evidence was "more than sufficient to clear the low bar of relevance"). As the Ninth Circuit also explained in *Sandoval*:

> [O]bjections for relevance are generally unnecessary on summary judgment because they are "duplicative of the summary judgment standard itself." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (Shubb, J.). On summary judgment, a court must determine whether the evidence viewed in the light most favorable to the non-moving party creates a "genuine dispute as to any material fact" that must be resolved at trial. Fed. R. Civ. P. 56(a).

> And under Federal Rule of Evidence 401, evidence is relevant if it "has any tendency to make a fact more or less probable" and that fact "is of consequence in determining the action." Fed. R. Evid. 401. Putting these two standards together, if evidence submitted on summary judgment could create a genuine dispute of material fact, it is, by definition, "of consequence in determining the action," and therefore relevant. *Id.* Conversely, if the submitted evidence does not create a genuine dispute of material fact, *there is no need for the court to separately determine whether it is relevant* because, even assuming it is not, it will not affect the ultimate summary judgment ruling.

*Id.* at 665 (emphasis added).

Here, the Court need not rule on most of FWS's relevance objections because they are not material to this ruling. *See infra* Section III.B. As to paragraphs seven, fifteen, and sixteen, the Court does not rely on FWS's past track record in complying with the ESA. As to paragraph fourteen, the FWS's objection is OVERRULED because the statement goes to the central issue in this case, which is the amount of time necessary for FWS to complete the California spotted owl's final listing determination.

The Court turns next to FWS's objections to the purported improper lay opinions in paragraphs five, nine, twelve, and thirteen of the Greenwald declaration. *See* Opp. at 20-22 (citing Fed. R. Evid. 701). FWS contends that Mr. Greenwald lacks personal knowledge of the subject matter contained in paragraphs nine, twelve, and thirteen. *See id.* at 20-21 (citing Fed. R. Evid. 602). FWS also maintains that paragraph nine lacks foundation. *Id.* FWS does not offer any additional justification for its position on paragraph five. The relevant provisions are as follows:

> During this flight, I witness the loss and fragmentation of habitat primarily due to logging that has caused the endangerment of the owl. Greenwald Decl. ¶ 5.

> Delays in species' protection and a large backlog of listing determinations are in many ways a problem of the Service's own making. Since 1998, the Service has annually requested a cap on listing spending that limits how much of the agency's budget can be used to list species. The Service has also consistently asked for less than is needed to make listing determinations for species in need of protection, particularly for fiscal years 2026 and 2027, when the Service requested a budget of just $7,375,000, down from $22,000,000 for fiscal year 2025. Ultimately, Congress appropriated $14,000,000 for fiscal year 2025, which was still a 36 percent drop. *Id.* ¶ 9.



United States District Court
Northern District of California

> Even with a reduced budget and staff, the Service can still complete more species' listings than it has to date, particularly when their feet are held to the fire. *Id.* ¶ 12.
>
> [T]he Service could still list considerably more species than it is on track to do at the current rate[.] *Id.*
>
> The Service also has an exceedingly complex process for making listing determinations (12-month findings) that goes well beyond statutory requirements, including creating multiple documents in support of listing determinations and a process that involves sign-off by more than a dozen personnel at multiple levels of the agency. It is completely within the Service's discretion to streamline the process. *Id.* ¶ 13.

As before, the Court need not rule on FWS's objections to paragraphs five and nine because the Court does not rely on the material at issue. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (noting that a court must rule on evidentiary objections "that are material to its ruling"). The threats to the owl are undisputed, and the Court does not consider the history of FWS's budget requests in this Order. FWS's objections to paragraphs twelve and thirteen are SUSTAINED. Mr. Greenwald is not an FWS employee, so he lacks personal knowledge of FWS's capacity and internal processes, and his statements regarding statutory requirements and agency discretion are legal conclusions. *Cf. Siebert v. Gene Sec. Network, Inc.*, 75 F. Supp. 3d 1108, 1114-15 (N.D. Cal. 2014) (overruling an evidentiary objection because an agency *employee* had personal knowledge of the "ordinary inner workings" of the agency).

**2. The Center's objections to the previous settlement agreement**

In support of its proposed timeline, FWS provided a copy of a prior settlement agreement with the Center to establish the number of other "court-ordered deadlines" that FWS must meet. *See* Settlement Agreement; *see also* Opp. at 14. The Center asks the Court not to consider the Settlement Agreement because "[b]y its own terms the Settlement cannot be used as evidence in this case." Reply at 7. The Center relies on paragraph 10 of the Agreement:

> No part of this Agreement shall have precedential value in any litigation or in representations before any court or forum or in any public setting. No party shall use this Agreement or the terms herein as evidence of what does or does not constitute a reasonable timeline for making determinations regarding the listing of or designation of critical habitat for any species.



United States District Court
Northern District of California

This objection is OVERRULED. FWS does not invoke the Settlement Agreement for its precedential value, so the provision mandating that "no part of this Agreement shall have precedential value" does not apply here. Likewise, FWS does not invoke the Settlement Agreement as "evidence of what does or does not constitute a reasonable timeline" for making final determinations. Instead, FWS references the Settlement Agreement to establish its workload between now and its proposed listing date for the California spotted owl. Even if the Settlement Agreement itself is not admissible as evidence, the relevant question at this stage is whether its *contents* are admissible. *Fraser*, 342 F.3d at 1036. "If the contents of a document can be presented in a form that would be admissible at trial . . . the mere fact that the document itself might be excludable . . . provides no basis for refusing to consider it on summary judgment." *Sandoval*, 985 F.3d at 666. Here, FWS likely could establish the same facts regarding its workload through witness testimony, so exclusion is not warranted.

**B. Reasonable Deadline**

There is no dispute as to liability: FWS was required by statute to act by February 23, 2024, but it failed to do so. *See* Answer ¶¶ 41, 47-48, ECF No. 14; Fact Nos. 1-3. Moreover, the parties agree that the appropriate remedy is an order directing FWS to issue a final listing determination for the California spotted owl.[2] *See* Mot. at 7, 10; Opp. at 8, 12. The parties contest only the deadline by which the Court should require FWS to satisfy its statutory duty. FWS has already been out of compliance for two and a half years. Nevertheless, FWS contends that May 10, 2028, is the earliest date by which it could make a final listing determination for the California spotted owl because of the agency's (1) staffing and funding levels, and (2) existing court-ordered

---

[2] The Center has established its standing to bring suit on behalf of its members and to seek the relief requested by its motion for summary judgment. *See Arizona All. for Retired Ams. v. Mayes*, 186 F.4th 622, 631 n.1 (9th Cir. 2026) (en banc) (discussing representational standing); Mot. at 9-10; Miller Decl., ECF No. 23; Britting Decl., ECF No. 24. The Center has established that "its members would have standing to sue in their own right, the interests at stake are germane to [its] purpose, and neither the claim asserted nor the relief requested requires individual members' participation in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 169 (2000); *see also Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin.*, 99 F. Supp. 3d 1033, 1044-45 (N.D. Cal. 2015) (finding that the Center has representational standing to bring an ESA claim). FWS has not contested standing nor the Court's authority to grant the requested remedy. *See* Opp. at 8.

deadlines. Opp. at 12. By contrast, the Center requests a compliance deadline of November 19, 2026 – roughly eighteen months earlier. Mot. at 10. For the following reasons, the Court will order FWS to submit a final listing determination within approximately six months of this Order.

"As firmly recognized by the Supreme Court, . . . the ESA strips courts of at least some of their equitable discretion in determining whether injunctive relief is warranted," in that courts "must defer to Congress's recognition of the public interest in protecting endangered species." *San Francisco Baykeeper v. United States Fish & Wildlife Serv.,* No. 25-cv-01360-LJC, 2025 WL 2528687, at *6 (N.D. Cal. Sep. 3, 2025) (quoting *Cottonwood Env't L. Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1090 (9th Cir. 2015)). "Once a suit is brought against the Secretary for violating a non-discretionary deadline under the ESA, a district court must issue an injunction." *Ctr. for Biological Diversity v. Kempthorne*, No. C 08-1339 CW, 2008 WL 1902703, at *2 (N.D. Cal. Apr. 28, 2008) (citing *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1175 (9th Cir. 2002)).

However, "[i]n setting a timetable for agency action, the Ninth Circuit has instructed courts to follow a standard of reasonableness." *Ctr. for Biological Diversity v. Norton*, 304 F. Supp. 2d 1174, 1184 (D. Ariz. 2003) ("*Norton I*") (citing *Env't Def. Ctr. v. Babbitt*, 73 F.3d 867 (9th Cir. 1995)). A court should not "demand a deadline for agency compliance that is impossible or infeasible." *California v. EPA*, 385 F. Supp. 3d 903, 909 (N.D. Cal. 2019). To determine whether a deadline is infeasible, a court should consider: "(1) whether the 'budgetary' and 'manpower demands' required are 'beyond the agency's capacity or would unduly jeopardize the implementation of other essential programs'; and (2) an agency's need to have more time to sufficiently evaluate complex technical issues." *See id.* (quoting *Nat. Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 712-13 (D.C. Cir. 1974)). An agency that has failed to "discharge[] its statutory duty" bears an "especially heavy" burden to show impossibility or infeasibility. *Sierra Club v. Thomas*, 658 F. Supp. 165, 171-72 (N.D. Cal. 1987).

United States District Court
Northern District of California

### 1. FWS has not shown that a final listing determination is infeasible prior to its proposed May 10, 2028, deadline

FWS first contends that completing the final listing determination for the California spotted owl before May 10, 2028, is infeasible because of the agency's resources and existing court-ordered deadlines. The Court is not persuaded.

The crux of FWS's argument as it relates to resource constraints is that, as of fiscal year ("FY") 2026, FWS has and will continue to experience a "severe staffing shortage" and budget cuts. Opp. at 12. As an example, FWS points to the fact that Congress reduced the "National Listing Budget" – which dictates the amount of money that FWS can spend on final listing determinations – by 36% in FY 2026. *See id*. FWS also explains that the regional office responsible for the California spotted owl listing determination (Region 8) "has lost 25 percent of its Ecological Services staff." *Id*. at 14. The Court is sympathetic to the challenge of doing "far more with less." *Id*. at 13. But, as FWS concedes, government agencies with non-discretionary duties must "make increasingly difficult decisions about how to allocate [] resources to *meet* existing obligations," not evade them. *Id*. (emphasis added). The Court is persuaded by the reasoning of Magistrate Judge Lisa Cisneros, who concluded the following on this issue:

> If FWS's congressionally appropriated budget is insufficient for FWS to conduct the degree of thorough review that FWS would like to do within the statutory deadline, that would seem to reflect an implicit congressional determination that FWS cannot devote that level of resources to each petition, and must instead conduct a less thorough review to meet the mandatory deadline with the resources available.

*San Francisco Baykeeper*, 2025 WL 2528687, at *6.

FWS points the Court to *Environmental Defense Center* and *Center for Biological Diversity v. Norton*, 208 F. Supp. 2d 1044 (N.D. Cal. 2002) ("*Norton II*") in support of its position that FWS's funding constraints should dictate the compliance deadline. *See* Opp. at 11-12. However, these cases are inapposite because they occurred in the context of a total funding freeze. In *Environmental Defense Center*, the court delayed the final listing determination until "funds are made available" because of a congressional funding moratorium, during which time "*none* of the remaining funds . . . [could] be made available for making a final determination." 73 F.3d at 870, 872 (citing Public Law No. 104-06, 109 Stat. 73, 86 (Apr. 10, 1995)) (emphasis added). The court

United States District Court
Northern District of California

in *Norton II* also delayed the final listing determination because "[w]hile technically true that the [funding] moratorium is now gone . . . the effects of the moratorium still linger." 208 F. Supp. 2d at 1051. The same cannot be said today. Congress appropriated funds to FWS's National Listing Budget, and FWS does not contend that it lacks access to those funds. *See* Opp. at 13 (citing Maclin Decl. ¶ 5, ECF No. 28). FWS's contention that this funding is *insufficient* does not make the funding nonexistent or unavailable, nor does it authorize the agency to avoid or delay completing its final listing determinations. *See San Francisco Baykeeper*, 2025 WL 2528687, at *6 ("The ESA does not vest discretion in either Defendants or this Court to set aside Congress's judgment as to either the mandatory deadline or the funds available to meet it."). In any event, FWS has not submitted evidence of the costs (either monetary or staff time) required to make a final listing determination for the California spotted owl. Thus, FWS's evidence regarding general resource constraints does not establish that it would be infeasible to act promptly.

FWS also points to the number of other court-ordered actions that it must complete within the next two years to explain why Region 8 "simply has no [] capacity" to make a final listing determination for the California spotted owl until May 10, 2028. Opp. at 14. But the cited evidence does not support this conclusion. FWS bases its capacity argument primarily on the number of *12-month findings* identified in its National Listing Workplan ("Workplan") for the upcoming fiscal years.[3] *See id.* ("For Region 8, the Workplan identifies ten 12-month findings in FY 2026 and nine 12-month findings in FY 2027. . . . Compare this with FY 2028, in which the Workplan plans for only two 12-month findings in Region 8."). However, FWS already completed the 12-month finding for the California spotted owl, which culminated in the proposed rule that was published on February 23, 2023. The only work that remains is the spotted owl's final listing determination.

---

[3] The Workplan was developed to address "a backlog of outstanding listing determinations." Opp. at 4. The Workplan accounts for factors such as "settlement agreement requirements." *Id.* FWS emphasizes that the Settlement Agreement with the Center is a significant factor influencing the current Workplan. *Id.* at 14-15. However, FWS correctly acknowledged at the hearing that the Workplan, and the prioritization method used to inform it, is not a valid exercise of agency discretion to delay a final listing determination beyond the one-year mandatory statutory deadline. Moreover, the Settlement Agreement expressly provides that the Center may sue FWS over missed statutory deadlines for listing other species. Settlement Agreement ¶ C.4.

At the hearing, FWS countered that 12-month findings and final listing determinations compete for the same resources, and thus the workload associated with 12-month findings for other species is relevant to FWS's capacity. However, as FWS also explained at the hearing, the Workplan is not intended to reflect every action that FWS must take or expects to take during a particular period. Indeed, the Workplan accounts for very few final listing determinations, even though a final listing determination is required within a year after a species is proposed for listing. *See* Opp. at 5, 14 (explaining that the Workplan provides for just two final listing determinations *total* across four fiscal years (2026 through 2029) in Region 8). Not all 12-month findings require a final listing determination. *See* 16 U.S.C. § 1533(b)(3)(B)(i) (noting that a valid 12-month finding could be a conclusion that listing is not warranted). However, there is a significant disparity between the 12-month findings identified in the Workplan for Region 8 and the anticipated final listing determinations. This further indicates that the Workplan does not reflect the totality of the work that FWS can or must accomplish during a particular period, undermining FWS's position that its Workplan obligations will consume its entire capacity until May 2028.[4]

FWS also submitted declarations elaborating on its workload, as well as the work needed to complete the process of making a final listing determination for the owl. *See* Johnson Decl. ¶¶ 7-11, ECF No. 29; Maclin Decl. ¶¶ 18-20. The Court appreciates the work inherent in completing "a scientifically rigorous and defensible analysis." Opp. at 15. However, the declarations do not identify what "scientifically rigorous" analysis remains to be done, nor do they describe how long this work will take. The agency failed to quantify or even estimate the funding or staffing resources required to complete the owl's final listing determination. "Any review

[4] FWS states that "the California spotted owl is not included in the most recent Workplan" – which covers FY 2026 through FY 2030 – even though the statutory deadline for the owl's final listing determination was in 2024. Opp at 5 n.5. When asked at the hearing to describe the progress that has been made on the owl's final listing determination since February 2023, FWS responded that the owl was still in an unspecified "queue." FWS also suggested that, absent an order from this Court, the agency intended to complete the owl's final listing determination in May of 2028. These statements further indicate that the Workplan does not reflect the totality of the work that FWS can complete during a particular period. These statements also reveal that the remedy FWS proposes after nearly a year of litigation is an order requiring it to do what it already plans to do.

process will involve tradeoffs between thoroughness and speed," and the Court cannot simply "defer to FWS's assessment of . . . an appropriate timeline for review" because doing so would "reintroduce the very discretion that Congress sought to eliminate by adding deadlines to the [ESA]." *San Francisco Baykeeper*, 2025 WL 2528687, at *6-7. FWS must make the final listing determination for the California spotted owl consistent with the mandatory deadline and the funding providing by Congress. And "to the extent [FWS] feels aggrieved by Congress' failure to allocate proper resources in which to comply with [its] statutory duty, Congress, not the courts, is the proper governmental body to provide relief." *Norton I*, 304 F. Supp. 2d at 1179 (citation modified).

In sum, FWS failed to demonstrate that "FY 2028 is the first year in which Region 8 has the capacity to feasibly add another final listing determination." Opp. at 14. The Court therefore rejects FWS's proposed date of May 10, 2028.[5]

**2. Six months is a reasonable deadline**

The Court now considers whether FWS could reasonably complete the final listing determination for the California spotted owl by November 19, 2026, or whether more time is needed based on the undisputed facts and evidence before the Court. The Center proposes the November 19, 2026, deadline because it marks "the one-year anniversary of this lawsuit," and FWS has therefore had ample notice that the ESA's listing deadlines would be enforced. Reply at 3. But whether FWS *should* be able to satisfy its statutory obligation in less than a month does not indicate that FWS *is* able to do so as a matter of fact. Because there is no indication that a final rule submitted in less than thirty days from this Order would withstand future judicial scrutiny, ordering such rapid relief may be self-defeating. *See Sierra Club v. Thomas,* 828 F.2d 783, 798 (D.C. Cir. 1987) ("[An agency] must be afforded the amount of time necessary to . . . [reach] a final rulemaking that will not be arbitrary and capricious or an abuse of discretion."); *see also Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1109 (9th Cir. 2012).

[5] Even if the evidence supported that FY 2028 was the first year by which FWS could reasonably complete the final listing determination for the owl, it is unclear why FWS would need until May 10, 2028, to do so when FY 2028 begins on October 1, 2027.

Instead, the Court will "fall[] back on the statute." *San Francisco Baykeeper*, 2025 WL 2528687, at *10. The ESA requires FWS to finalize a listing determination within one year of issuing the corresponding proposed rule. *See* 16 U.S.C. § 1533(b)(6)(A). Thus, a one-year deadline from the date that the Court orders relief is the outer limit of reasonableness under these circumstances because it would afford FWS the full statutory period to complete work that should have been completed by February 23, 2024. Based on the undisputed facts and evidence before the Court, FWS can complete the work in six months. This deadline is consistent with the maximum extension contemplated by the statute. *See* 16 U.S.C. § 1533(b)(6)(B)(i) (providing that the Secretary may extend the one-year period "for not more than six months for purposes of soliciting additional data" under certain circumstances). This deadline provides FWS time to complete the steps that it claims are necessary: "gathering and analyzing new information," responding to already-received public comments on the proposed rule, and obtaining internal review and approval. *See* Johnson Decl. ¶¶ 7-10 (explaining that FWS needs time to prepare a "necessary and advisable" determination and an unspecified amount of time for "review and approval" by FWS and the Department of the Interior); *see also* Maclin Decl. ¶¶ 18-19 (describing the "levels" of review required for issuing a final listing determination). A six-month deadline also provides FWS time to address the approximately fifty public comments it received on the Proposed Listing Rule in 2023 – though FWS did not submit evidence indicating how long those responses are expected to take.

FWS also contends that it must now "complete additional requirements when issuing a 4(d) rule."[6] Opp. at 13. FWS cites to a recent court order holding that FWS must "account for costs," among other factors, when issuing a 4(d) rule for a threatened species. *Kansas Nat. Res. Coal. v. U.S. Fish & Wildlife Serv.*, 780 F. Supp. 3d 650, 661-62 (W.D. Tex. 2025). These requirements were not in place when FWS issued the proposed 4(d) rule for the Sierra Nevada

---

[6] Section 4(d) of the ESA provides for certain protective regulations that may be issued once a species is listed as "threatened." 16 U.S.C. § 1533(d). Relevant here, FWS developed a "proposed rule that is designed to address the conservation needs of the Sierra Nevada DPS of the California spotted owl" in connection with the Proposed Listing Rule. 88 Fed. Reg. at 11635.

DPS of the California spotted owl. Based on the current state of the law, the Court accepts FWS's position for purposes of this motion that it must satisfy these new requirements to mitigate the risk of a legal challenge to a final 4(d) rule for the owl. Accordingly, the Court has included time for FWS to satisfy these requirements in setting the six-month deadline. *See* Johnson Decl. ¶¶ 7-8 (explaining that FWS will prepare a "necessary and advisable" determination, provide 30 days for public comment, and then review and respond to public comments, which could be "completed in sixty days").[7]

## IV. CONCLUSION

For the foregoing reasons, the Center's motion for summary judgment is GRANTED in part. The pleadings and undisputed facts establish that FWS failed to comply with the mandatory statutory deadline to issue a final listing determination for the California spotted owl. Thus, the Center is entitled to judgment in its favor on its sole cause of action for violation of the ESA. *See* Compl. ¶¶ 45-49. As a remedy, FWS shall submit the final listing determination for the California spotted owl to the Federal Register by April 30, 2027, approximately six months from the date of this Order.[8] The Clerk shall enter judgment accordingly and close the case. The Court retains jurisdiction to enforce this Order.

**IT IS SO ORDERED.**

Dated: November 2, 2026



Eumi K. Lee
United States District Judge

[7] FWS recently promulgated a new regulation based on the *Kansas* ruling. 50 C.F.R. § 17.31(d). As FWS acknowledged at the hearing, the new regulation applies only to "species-specific rule[s] proposed after August 20, 2026," and the proposed rule in this case issued on February 23, 2023. Therefore, the regulation itself is inapplicable here. Nonetheless, the timing and process associated with the regulation reflects a reasonable benchmark for how long it may take FWS to satisfy the requirements articulated in the *Kansas* ruling.

[8] FWS asks that the Court order it to *submit*, rather than to *publish*, its final listing determination by a certain date because "the Office of the Federal Register is responsible for the actual publication." Opp. at 19-20 (citing Maclin Decl. ¶ 20). At the hearing, the Center agreed that this is the appropriate form of relief.